130    661
s90NW 658
d132 ¹330
d132 ¹331

PONTIAC, OXFORD & NORTHERN RAILROAD CO. *v.* REED

1. CONTRACTS—CONSTRUCTION—SIDE TRACK.

   A railroad made a contract with a mill owner to construct a side track to the mill for the convenience of the mill owner, and built the same in such a manner as to cut off the frontage of lots belonging to the owner of the mill. The consideration was $1, and a guaranty of $125 a year in freight receipts for two years. The railroad reserved title to the track, and the right to remove it after three years. The mill owner agreed to furnish free the right of way. Some years after he sold the premises. *Held,* that the grantee had the right to require the removal of the track at any time.

2. SAME.

   A permission in such contract that the railroad may use the side track for any purpose that will not interfere with or discommode the mill owner continues so long as the side track is allowed to remain on the premises.

Appeal from Oakland; Smith, J.   Submitted February 20, 1902.   (Docket No. 118.)   Decided June 3, 1902.

Bill by the Pontiac, Oxford & Northern Railroad Company against William Reed to restrain interference with a side track on defendant's land.   Defendant filed an answer in the nature of a cross-bill, asking affirmative relief. From the decree rendered, both parties appeal.   Modified in defendant's favor.

*Russel & Campbell,* for complainant.

*George O. Kinsman* (*Thomas L. Patterson,* of counsel), for defendant.

HOOKER, C. J.   The complainant, a railroad corporation, built a side track upon the premises now owned by the defendant, under a contract made with his grantors, who were then in possession, operating a mill and elevator thereon.   The contract is as follows:

"Memorandum of agreement made this 1st day of August, 1887, between the Pontiac, Oxford & Port Austin Railroad Company, of Michigan, hereinafter designated the 'Railroad Company,' and the Craig Wheat-Cleaner Company, of Oxford, Michigan, its assigns or successors, hereinafter designated the 'Cleaner Company,' witnesseth, that whereas the cleaner company wishes to secure a side or spur track to their elevator and mill at Oxford for the purpose of shipping grain and mill products by rail to and from Detroit and elsewhere, the railroad company, for one dollar and other considerations hereinafter named, agrees to construct a siding or spur track, in length not less than three hundred feet, from its main track at Oxford, adjacent to said elevator, to facilitate the handling and moving of grain and mill products for the cleaner company, and to bear all of the expenses of the same, except as hereinafter provided.

"The cleaner company agrees to furnish free the right of way for said spur or side track over their grounds at place to be agreed upon between the respective parties; the right of ownership of the rails, ties, etc., to remain with the railroad company, with the further right to remove the same at its option any time after three years from date hereof, should it at any time thereafter desire so to do, by giving the cleaner company thirty days' notice of its intention.

In consideration of said facilities furnished or to be furnished, the cleaner company hereby covenants and agrees that it will use said spur or side track for the purpose of loading and unloading cars with grain or mill products to be shipped over the road of the railroad company, and further agrees that the shipment of freight in car-load lots shall within two years, computed at the rate of two cents per hundred pounds, aggregate two hundred and fifty dollars; and on failure on the part of the cleaner company to make shipments of such freight aggregating the amount stated, of one hundred and twenty-five dollars for each of the two years commencing with and after the date hereof, they shall pay to the said railroad company in cash, on or before the expiration of the two years, the difference between the amount of freight shipped, computed at two cents per hundred pounds, and the said two hundred and fifty dollars, which is represented in a guaranty note of like amount, of even date herewith.

"It is further mutually agreed and understood between

the parties hereunto that the guaranty of the cleaner company is made with the understanding that the freight rates to be made by the railroad company to Detroit and other points beyond where the cleaner company may wish to ship their grain or mill products shall not exceed, at the time the shipments are offered and made, the freight rates made to the same points from Oxford for the cleaner company by the Michigan Central Railroad Company. It is further agreed that, should the railroad company at any time or for any reason be unwilling or unable to make the same rate from Oxford to any point reached by it and its connecting or affiliating roads on any grain or mill-product traffic offered to it by the cleaner company as is made by the Michigan Central Railroad Company, the cleaner company shall be credited upon its obligation at the rate of one cent per hundred pounds upon all such traffic offered to the railroad company and refused by it for the reasons above stated.

" The railroad company reserves the right to use said spur or side track for other purposes than that of the cleaner company whenever it desires to do so, provided that its use thereof shall not in any manner interfere with or discommode the cleaner company.

"Should the cleaner company make shipment of grain and mill products in car lots from Oxford over the road of the railroad company within two years from the date hereof in amounts, computed at the rate of two cents per hundred pounds, that shall aggregate, together with the credits hereinbefore mentioned, two hundred and fifty dollars, the guaranty note shall become null and void, and be returned to the cleaner company, duly canceled.

"In witness whereof, we have hereunto affixed our respective names the day and date first above given, at Oxford, Michigan.

> "The PONTIAC, OXFORD &
> PORT AUSTIN R. R. CO.,
> "By JAMES HOUSTON, Gen. Supt.
> "The CRAIG WHEAT-CLEANER CO.,
> "By A. M. VARNEY."

The business conducted by the Craig Wheat-Cleaner Company did not prove profitable, and after some years resulted in failure and discontinuance of business. Subsequently the defendant purchased the property from the Craig Wheat-Cleaner Company, and for a year or more past has operated the same. During the time that the

premises were vacant, the railroad company used the track according to its own convenience, but after defendant acquired the premises he objected to the storage of the cars upon the same, and finally obstructed the track. Thereupon the complainant filed its bill to restrain his interference with the use of the track. The defendant answered, claiming affirmative relief. The railroad company contends that it has acquired the permanent right to use this side track according to its own convenience, while the defendant claims that he may revoke its right to use it at all at any time, if such a right has not been already revoked by a conveyance of the premises to him. He contends that the contract amounts to a license. The decree made by the learned circuit judge restrains the complainant from such use of the track as will interfere with the convenience of the defendant, but denies the claim of the defendant, and has the effect of adjudicating the question of title. Both parties have appealed.

This contract should be construed in the light of the surrounding circumstances. The premises in question consisted of several lots fronting upon a street. The side track crosses those lots but a few feet from the street line, practically cutting off their frontage, and making it impossible to construct any building upon the street line so long as the track remains. The contract shows upon its face that it was made for the convenience of the cleaner company. It was accompanied by a guaranty made by the defendant's grantors, securing to the complainant a revenue from said premises of not less than $125 a year for two years. It reserved to the complainant the title to the rails and ties of which the track was constructed, and the right to remove the track at any time after the expiration of three years. It contains nothing in the nature of a grant of title to the land upon which the track was built, the only provision in that respect being that the cleaner company should furnish free the right of way for said side track. Nothing in the contract expressly provides that the railroad company shall have the right to maintain the side track beyond the time when it should be desired by

the cleaner company. We may safely take judicial notice that manufacturing concerns all over the country enjoy the facilities of side tracks by agreement with railroad companies, and we think it would be a surprise to the business public to learn that, by arranging for such facilities, they yield to the railroad companies who furnish them a right to maintain and use such tracks for their own purposes in perpetuity, after they have ceased to be required for the convenience of those for whose use they were built. If the complainant's contention is correct, it could maintain its track on these premises, though the cleaning mill should be destroyed by fire, or the owner decide to use his premises for other purposes, which would have no use for a railroad, and which would require the erection of buildings to the street line.

It is unnecessary to discuss at length the question of license. If it be admitted that this is a license, and that a consideration was paid for it, and that money was expended by the complainant to accomplish the object of the contract, the fact remains that a reasonable construction of the contract negatives the conclusion that either party supposed that the complainant was obtaining, or that defendant's grantors were granting, a right of way in perpetuity. The more consistent view is that both parties understood that the railroad company built a side track for the convenience of the occupant, to be maintained as long as he should desire, and no longer, subject, however, to the right of the company to remove after the expiration of three years.

We do not discover that the prayer of the defendant's cross-bill asks a decree for the removal of the track, and we think that while it remains there the railroad company is entitled to use it in accordance with the decree of the circuit judge. The decree is therefore affirmed, subject to the right of the railroad company to remove said track upon the notice prescribed in the contract, and the right of the defendant to require its removal at any time.

The defendant will recover costs of this court.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., did not sit.